1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    MELLISSA L. FORTUNE,                    Case No.  22-cv-05247-KAW

8                      Plaintiff,
                                             **ORDER DENYING MOTION TO**
9           v.                               **DISMISS**

10   NISSAN NORTH AMERICA, INC.,             Re: Dkt. No. 21

11                     Defendant.

12

13          Plaintiff Mellissa Fortune filed the instant suit against Defendant Nissan North America,

14   Inc., alleging violations of the Song-Berly Act, Cal. Civ. Code § 1790 *et seq.*, and fraud related

15   to her purchase of a vehicle.  (*See* Second Am. Compl. ("SAC") ¶ 4, Dkt. No. 18.)  Pending before

16   the Court is Defendant's motion to dismiss.  (Def.'s Mot. to Dismiss, Dkt. No. 21.)

17          The Court previously deemed this matter suitable for disposition without a hearing

18   pursuant to Civil Local Rule 7-1(b).  (Dkt. No. 27.)  Having considered the parties' filings and the

19   relevant legal authorities, the Court DENIES Defendant's motion to dismiss.

20                              **I.    BACKGROUND**

21          In 2021, Plaintiff purchased a 2019 Nissan Sentra ("Subject Vehicle").  (SAC ¶ 2.)

22   Plaintiff purchased the Subject Vehicle as a Certified Pre-owned ("CPO") vehicle, with

23   Defendant's new and full CPO warranty.  (SAC ¶ 2.)

24          Plaintiff asserts that the Subject Vehicle suffered from serious defects and nonconformities

25   to warranty.  (SAC ¶ 4.)  On August 10, 2021, Plaintiff presented the Subject Vehicle to

26   Defendant's authorized repair facility, reporting a rattling noise upon acceleration.  (SAC ¶ 6.)

27   Defendant's authorized technician found a loose Air Conditioning hose nut, which he tightened.

28   (SAC ¶ 6.)  Plaintiff asserts that her concerns were not properly addressed and have persisted.

*United States District Court*
*Northern District of California*

1    (SAC ¶ 6.)

2          On September 23, 2021, Plaintiff presented the Subject Vehicle to Defendant's authorized

3    repair facility, reporting that the Subject Vehicle lacked power upon acceleration.  (SAC ¶ 7.)

4    Defendant's authorized technician could not duplicate Plaintiff's concern, and asserted no

5    nonconformity.  (SAC ¶ 7.)  Plaintiff, however, alleges that this "lack of acceleration/power is a

6    systemic symptom commonly found and reported in the defective Forward Emergency Braking

7    ("FEB") system."  (SAC ¶ 7.)  Plaintiff further alleges that the problem has persisted.

8          On April 27, 2022, Plaintiff presented the Subject Vehicle to Defendant's authorized repair

9    facility, again reporting the lack of power upon acceleration.  (SAC ¶ 8.)  Plaintiff also reported of

10   the Front Collision Warning light illuminating even when there were no obstructions in the

11   vicinity.  (SAC ¶ 8.)  After checking for Diagnostic Trouble Codes ("DTCs"), Defendant's

12   technician found DTC C1A16 indicating a stain/debris blocking the distance radar sensors.  (SAC

13   ¶ 8.)  Plaintiff asserts this code has been repeatedly misidentified as the root cause by Defendant in

14   other vehicles containing the FEB defect.  (SAC ¶ 8.)  Defendant's technician followed

15   Defendant's Service Bulletin NTB19-033D and removed the debris.  (SAC ¶ 8.)  Plaintiff also

16   alleges that she reported various other problems, including the Subject Vehicle slipping between

17   gears upon shifting, making a whistling sound upon driving on the highway, and making a noise

18   resembling a broken muffler, which Defendant's technician diagnosed and sought to resolve.

19   (SAC ¶ 8.)

20         Plaintiff asserts that none of these repair attempts successfully repaired the Subject

21   Vehicle, and that she continued to experience symptoms of the various defects.  (SAC ¶¶ 9-10.)

22   Additionally, Plaintiff alleges that some of the defects concerned the FEB system and a defective

23   Continental ARS410 radar sensor.  (SAC ¶ 14.)  Plaintiff asserts that the faulty FEB system has

24   led Plaintiff to experience symptoms including the Subject Vehicle stalling when sitting at a stop

25   for less than a minute, detecting non-existent obstacles and triggering the brakes, deactivating the

26   FEB, shaking vigorously when approaching a stop, stopping without warning, and making

27   unexpected phantom decelerations and stops due to the false engagement of the FEB.  (SAC ¶ 15.)

28         Plaintiff further alleges that Defendant never disclosed this FEB defect to her, despite

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  having received an unusually large number of complaints about false activations of the FEB

2  system almost immediately after the earliest vehicle entered the market.  (SAC ¶¶ 23-24, 34.)

3  Defendant has also issued Technical Service Bulletins ("TSB") acknowledging customer reports

4  of unexpected braking and collision warnings, issued a Notice of Defect in Canada for 91,000

5  affected vehicles "because their automatic emergency braking (AEB) system could unintentionally

6  engage," and issued a recall of vehicles in Asia due to false activations of the ARS410 radar and

7  FEB.  (SAC ¶¶ 37-38, 43, 44.)

8      On September 14, 2022, Plaintiff filed the instant action.  (Compl., Dkt. No. 1.)  In the

9  operative complaint, Plaintiff brings claims for: (1) Violation of the Song-Beverly Act – Breach of

10  Express Warranty, (2) Violation of the Song-Beverly Act – Breach of Implied Warranty, (3)

11  Violation of the Song-Beverly Act § 1793.2(b), and (4) fraudulent concealment.  On December 8,

12  2022, Defendant filed the instant motion to dismiss.  On December 22, 2022, Plaintiff filed her

13  opposition.  (Pl.'s Opp'n, Dkt. No. 24.)  On December 29, 2022, Defendant filed its reply.  (Def.'s

14  Reply, Dkt. No. 25.)

15                    **II.    LEGAL STANDARD**

16      Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

17  on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule

18  12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250

19  F.3d 729, 732 (9th Cir. 2001).

20      In considering such a motion, a court must "accept as true all of the factual allegations

21  contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

22  omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

23  there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

24  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

26  marks omitted).

27      A claim is plausible on its face when a plaintiff "pleads factual content that allows the

28  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

1    *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate

2    "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

3    will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4        "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are

5    inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th

6    Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

7    a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a

8    probability requirement, but it asks for more than a sheer possibility that a defendant has acted

9    unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's

10   liability, it stops short of the line between possibility and plausibility of entitlement to relief."

11   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

12       Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no

13   request to amend is made "unless it determines that the pleading could not possibly be cured by

14   the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations

15   omitted).

16                        **III.    DISCUSSION**

17   **A.    Claims 1-3: Song-Beverly Warranty Claims**

18       The Song-Beverly Act "provides certain protections and remedies for consumers who

19   purchase consumer goods such as motor vehicles covered by express warranties."  *Niedermeier v.*

20   *FCA US LLC*, 56 Cal. App. 5th 1052, 1064 (2020).  For example, the Song-Beverly Act imposes

21   service and repair obligations, and requires that a manufacturer who "is unable to service or repair

22   a new motor vehicle to conform to the applicable express warranties after a reasonable number of

23   attempts . . . must either promptly replace the new motor vehicle or promptly make restitution to

24   the buyer."  *Id.* (internal quotations omitted).

25       Defendant asserts that each of Plaintiff's warranty claims fail for failure to adequately

26   allege a defect.  (Def.'s Mot. to Dismiss at 4.)  "In the context of product defect claims, district

27   courts in the Ninth Circuit have often held that a complaint provides fair notice of the defect if it

28   (1) identifies the particular part or system affected by the defect, and (2) describes the problems

4

1    allegedly caused by the defect." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1115

2    (C.D. Cal. 2021); *see also Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1005 (N.D.

3    Cal. 2021).

4           The Court finds that Plaintiff has adequately alleged a defect.  Plaintiff identifies the

5    particular part or system affected by the defect, namely the FEB system and its Continental ARS-

6    410 radar sensor subcomponent.  (SAC ¶¶ 7-8; Pl.'s Opp'n at 11.)  Plaintiff also identifies the

7    DTC C1A16 and Service Bulletin NTB19-033D.  (SAC ¶ 8.)   Plaintiff further describes the

8    problems allegedly caused by the defect, including the lack of power upon acceleration and the

9    activation of the collision warning light.  (SAC ¶¶ 7-8.)  Identical allegations have been found

10   sufficient by other district courts.  *See Pineda v. Nissan N. America, Inc.*, No. CV 22-0239-DMG

11   (JCx), 2023 U.S. Dist. LEXIS 8065, at *5 (C.D. Cal. Jan. 17, 2023) (finding adequate

12   identification of defect where the FAC identified the FEB, distance sensor, DTC C1A16, and

13   Service Bulletin NTB19-033).

                    **i.     Express Warranty Claims**

15          In the alternative, Defendant argues that Plaintiff's first and third claims regarding express

16   warranty must be dismissed for failure to allege repeat presentations.  (Def.'s Mot. to Dismiss at

17   7.)  "[U]nless the purchaser presents the vehicle for repair more than once, it cannot be found that

18   the dealer 'refused' to satisfy its obligation under the warrant to repair the Vehicle."  *Clark*, 528 F.

19   Supp. 3d at 1118.

20          The Court finds that Plaintiff has adequately alleged that she presented the vehicle for

21   repair more than once as to the FEB system.  Specifically, on September 23, 2021, Plaintiff

22   brought in the Subject Vehicle, complaining about the lack of power upon acceleration.  (SAC ¶

23   7.)  On April 27, 2022, Plaintiff again brought in the Subject Vehicle based on the same

24   complaint, as well as other complaints related to the FEB system, *i.e.*, the illumination of the

25   collision light.  (SAC ¶ 8.)  Plaintiff further alleges that the problems persisted after the repairs.

26   (SAC ¶¶ 9-10.)  Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's

27   express warranty claims.

28   //

United States District Court
Northern District of California

### ii.     Implied Warranty Claim

Defendant argues that Plaintiff's second claim regarding implied warranty must be dismissed for failure to allege that the vehicle was not merchantable.  (Def.'s Mot. to Dismiss at 9.)  "To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that his vehicle was not 'fit for the ordinary purpose for which a vehicle is used.'"  *Pineda*, 2023 U.S. Dist. LEXIS 8065, at *10 (quoting *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (*2007)).  Further, "[t]o render a vehicle unmerchantable, an alleged defect must 'drastically undermine the ordinary operation of the vehicle.'  A vehicle is not unfit where 'the alleged defect did not compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage range."  *Id.* (quoting *Troup v. Toyota Motor Corp.*, 545 Fed. App's 668, 669 (9th Cir. 2013)).

The Court finds that Plaintiff has sufficiently alleged that the alleged defect compromises the vehicle's safety.  For example, Plaintiff alleges that the defect in the FEB resulted in Plaintiff experiencing the Subject Vehicle "automatically triggering the brakes and causing an abrupt slowdown or complete stop with no actual need to do so."  (SAC ¶ 15.)  Plaintiff also alleges that the defect would cause the Subject Vehicle to suffer "significant, unexpected, phantom decelerations and stops due to the false engagement of the FEB system."  (SAC ¶ 15.)  As the *Pineda* court found, "[i]t is not difficult to understand that random, uncontrolled braking can 'drastically undermine' the 'ordinary operation' of a car."  2023 U.S. Dist. LEXIS 8065, at *11. The Court DENIES Defendant's motion to dismiss Plaintiff's implied warranty claim.

### B.     Claim 4: Fraud

Finally, Defendant contends that Plaintiff's fraud claim is inadequately pled, as Plaintiff does not identify a false statement that she relied on, including who made the representation, its contents, when or where it was made, how it was made, or how Plaintiff relied on it.  (Defs.' Mot. to Dismiss at 12-13.)

In general, "[a]llegations of fraud must meet the heightened pleading standards of Rule 9(b), which requires specificity including an account of the time, place, and specific content of the false representations."  *Falk v. GMC*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).  Courts in this Circuit, however, have acknowledged that "a plaintiff in a fraud by omission suit will not be able

to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Id.* (internal quotation omitted).  Thus, courts have declined to dismiss a fraud by omission claim "for failure to precisely state the time and place of the fraudulent content."  *Id.*; *see Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) ("Because such a plaintiff is alleging a failure to act instead of an affirmative act, he cannot point out the specific moment when the defendant failed to act.  So, a fraud by omission, or fraud by concealment, claim, can succeed without the same level of specificity required by a normal fraud claim.").  Instead, courts have found:

> [T]o plead the circumstances of omission with specificity, [a] plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.

*Stewart v. Electrolux Home Prods.*, 304 F. Supp. 3d 894, 907 (E.D. Cal. 2018) (internal quotation omitted).

The Court finds that Plaintiff's allegations are sufficient.  Plaintiff has alleged that Defendant knew that the FEB system was defective, including that Defendant knew of the problem of false activation, as it had acknowledged the problem in a warning in the owner's manual, approximately 11 TSBs, the Canada Notice of Defect, and the 2020 recall.  (SAC ¶ 33, 37-38, 43-44.)  Plaintiff further states that she reviewed Defendant's promotional materials, including its website and the Monroney sticker and from interactions with sales representatives, none of which disclosed the FEB defect.  (SAC ¶ 23.)  Plaintiff also alleges that based on Defendant's advertising, she was aware of its marketing message regarding dependability and safety, which was a primary reason for her purchase of the subject vehicle.  (SAC ¶ 24.)  Finally, Plaintiff alleges that if the FEB defect had been disclosed, she would have not purchased the Subject Vehicle or would have paid less for it.  (SAC ¶ 27.)  At the pleading stage, this is sufficient.

In its original motion, Defendant also argued that the economic loss rule bars Plaintiff's fraud claim.  (Def.'s Mot. to Dismiss at 15.)  In general, "the economic loss rule provides: Where

United States District Court
Northern District of California

1   a purchaser's expectations in a sale are frustrated because the product he bought is not working

2   properly, his remedy is said to be in contract alone, for he has suffered only economic losses."

3   *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotation omitted).

4   Plaintiff, however, points to *Dhital v. Nissan North America, Inc.*, in which the California Court of

5   Appeal found that the plaintiff's claim for fraudulent inducement (concealment) was not barred by

6   the economic loss rule.  84 Cal. App. 5th 828, 837 (2022).  Like the instant case, the *Dhital*

7   plaintiffs had alleged that "Nissan, by intentionally concealing facts about the defective

8   transmission, fraudulently induced them to purchase a car."  *Id.* at 838.  The California Court of

9   Appeal found that "*Robinson* did not hold that any claims for fraudulent inducement are barred by

10  the economic loss rule.  Quite the contrary, the *Robinson* court affirmed that tort damages *are*

11  available in contract cases where the contract was fraudulently induced."  *Id.* at 839.  The issue

12  thus was whether "the duty that gives rise to tort liability is either completely independent of the

13  contract or arises from conduct which is both intentional and intended to harm."  *Id.* at 841.  As

14  applied, the California Court of Appeal found that such "independence is present in the case of

15  fraudulent inducement . . . because a defendant's conduct in fraudulently inducing someone to

16  enter a contract is separate from the defendant's later breach of the contract or warranty provisions

17  that were agreed to."  *Id.*  In its reply, Defendant does not dispute *Dhital* or its applicability, and

18  relies solely on the failure to adequately plead a fraud claim.  (Def.'s Reply at 2.)  Accordingly,

19  the Court finds that the economic loss rule does not bar Plaintiff's claim.

20          Likewise, Defendant argues in its original motion that there is no transactional relationship

21  between the parties, but does not raise this argument in its reply.  (Def.'s Mot. to Dismiss at 13;

22  Def.'s Reply at 2.)  It is unclear how there is no transactional relationship, given that the Subject

23  Vehicle was a "Certified Pre-owned ('CPO') vehicle with an accompanying NISSAN NORTH

24  AMERICA, INC.'S new and full CPO warranty."  (SAC ¶ 2; *see also* Pl.'s Opp'n at 7 (stating that

25  the Certified Pre-Owned inspection was conducted by Defendant's authorized retail dealership);

26  *Dhital*, 84 Cal. App. 5th at 844 (rejecting argument that the plaintiff did not adequately plead a

27  buyer-seller relationship where the plaintiff alleged that they bought the car from a Nissan

28  dealership and that Nissan backed the car with an express warranty).

## IV.     CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion to dismiss.

IT IS SO ORDERED.

Dated: February 16, 2023

_____
KANDIS A. WESTMORE
United States Magistrate Judge